# Exhibit C

# SUPPLY AGREEMENT

**THIS SUPPLY AGREEMENT** (the "Agreement"), is made and entered into as of June 26, 2014 (the "Effective Date") by and between Elysium Health, LLC, a Florida limited liability corporation having a place of business at 200 Congress Park Drive, Suite 205, Delray Beach, FL 33445 and ChromaDex Inc., a California corporation with principal offices located at 10005 Muirlands, Blvd, Suite G, Irvine, CA 92618, USA.

## RECITALS

WHEREAS, the Seller (as defined below) has developed a novel and proprietary ingredient, pterostilbene, with the trade name pTeroPure® ("the Product").

WHEREAS, the Buyer (as defined below) desires to purchase the Product from Seller and Seller desires to sell Product to Buyer subject to the terms and conditions hereinafter described.

NOW, THEREFORE, in consideration of the mutual premises and agreements contained herein and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows.

1. **Definitions.**

The following terms have the meanings specified below:

"Affiliate" shall mean, with respect to a Party, any person or entity that controls, is controlled by, or is under common control with such Party. An entity or person shall be deemed to be in control of another entity ("Controlled Entity") if the former owns directly or indirectly at least fifty percent (50%) of the outstanding voting equity of the Controlled Entity (or some other majority equity or ownership interest exits, in the event that such Controlled Entity is other than a corporation).

"Buyer" means Elysium Health, LLC, collectively with any Affiliate of such party.

"Confidential Information" shall mean, with respect to a party, all information of any kind whatsoever, and all tangible and intangible embodiments thereof of any kind whatsoever, which is disclosed by such party to the other party and is marked, identified as or otherwise acknowledged to be confidential at the time of disclosure to the other party. Notwithstanding the foregoing, Confidential Information of a party shall not include information which the other party can establish by written documentation (a) to have been publicly known prior to disclosure of such information by the disclosing party to the other party, (b) to have become publicly known, without fault on the part of the other party, subsequent to disclosure of such information by the disclosing party to the other party, (c) to have been received by the other party at any time from a source, other than the disclosing party, rightfully having possession of and the right to disclose such information without obligation of confidentiality to the disclosing party, (d) to have been otherwise known by the other party prior to disclosure of such information by the disclosing party to the other party, or (e) to have been independently developed by employees or agents of the other party without access to or use of such information disclosed by the disclosing party to the other party.

"Finished Products" shall mean the Buyer's finished product containing Product.

"Good Manufacturing Practices" shall mean good manufacturing practices and quality system regulations set forth by any Regulatory Authority of a country in which the Finished Products shall be manufactured or sold, and if the Product is manufactured outside of the Territory, the good manufacturing practices and quality system regulations in the country in which the Product is manufactured; all as updated, amended and revised from time to time.

"Specification" shall mean the description the Product set forth on Exhibit A.

"Territory" shall mean the United States.

"Seller" means ChromaDex, Inc., its Affiliates and their respective successors and assigns.

2. **Ordering, Purchase Price and Payment.**

   2.1 Purchase Orders. Buyer shall periodically submit purchase orders for the Product to Seller, which purchase orders shall set forth the specific quantities needed, delivery date and shipping instructions. Such purchase orders shall be submitted to Seller at least thirty (30) days prior to the required delivery date specified therein. Seller does not guarantee fulfillment of any purchase orders submitted on less than thirty (30) day notice, however Seller will use commercially reasonable efforts to fulfill those purchase orders. The minimum purchase order quantity shall be 20kg and purchases must be made in 20kg increments.

   2.2 Purchase Price and Payment. The purchase price for the Product shall be at REDACTED USD per kilogram (REDACTED kg) (the "Price"). During the Term of this Agreement, the Parties agree to negotiate in good faith price reductions based on volumes purchased. Buyer shall pay for all Product via credit card prior to shipment. Payment terms may be modified after the Effective Date by mutual agreement of the parties in writing. Failure to make prompt and full payment hereunder constitutes a material breach of the Agreement.

3. **Obligations.**

   3.1 Buyer may not re-sell or re-ship the Product in bulk raw material form, unless expressly authorized to do so in writing by Seller.

   3.2 For U.S. distribution, on or in labels, packaging, advertising, promotional materials or Internet communications for Buyer's Finished Product, Buyer will only make claims that are substantiated by competent and reliable scientific evidence, and are in compliance with all applicable laws, rules, and regulations. Buyer may not use, in labeling, advertising, promotion or otherwise: (a) any statements or quotations made by or attributed to any investigator who has conducted clinical studies on the Product, or (b) any photographs or other images of such investigators, without (i) the prior written consent of such investigators and the institutions at which such studies were conducted, and (ii) 20 days notification to Seller of such written consent prior to any such use. Buyer will not misrepresent on product labels the amount, quantity or level of the Product contained in the Finished Product. Without limiting Section 9(a), in the event that a third party is used by Buyer to manufacture any of the Finished Product for marketing or sale by Buyer, Buyer hereby guarantees compliance by said third party with the requirements of this Section 3, specifically including compliance with current Good Manufacturing Practices as set forth in 21 CFR section 111 and other applicable rules, regulations, statutes, and laws. In the event that current labeling, packaging or formulations of the Finished Product do not comply with the requirements of this Section 3, Buyer will immediately rectify all nonconforming Finished Product in a manner reasonably acceptable to Seller or Seller reserves the right to immediately terminate this Agreement.

   3.3 Patent Marking. During the Term, Buyer will ensure proper patent marking on all Finished Product. All Finished Product shall be marked as follows if the webpage that is accessed through the following link lists out to a patent that claims the Product:

   "Patent: See www.ChromaDexPatents.com";

   or as mutually agreed to in writing by the Parties.

4. **Taxes and Import Duties.** The price of the Product specified does not include federal taxes, state or local sales taxes, use taxes, occupational taxes or import duties. Unless prohibited by law, Buyer is responsible for and shall pay all applicable sales, use, occupational, excise, value added or other similar taxes or import duties applicable to the manufacture, sale, price, delivery or use of the Products provided by Seller, or in lieu thereof,

Buyer shall provide Seller with a tax-exemption certificate acceptable to and considered valid by the applicable taxing authorities.

5. **Delivery and Risk of Loss.** Each shipment of Product by Seller shall contain a Certificate of Analysis providing an identifying lot number, expiration date, and lot-specific quality control report. All sales are FOB\FCA (INCOTERMS 2010) Seller's U.S. dock. Risk of loss, destruction of or damage to the Product shall be Seller's until delivery of the Product to a common carrier at Seller's U.S. dock. Thereafter, title shall pass to Buyer and Buyer shall be fully responsible, and shall hold Seller harmless, for and assume all risk of loss, destruction of or damage to the Product occurring thereafter. Loss or damage to the Product after risk of loss has passed to Buyer will not release or excuse Buyer from its obligations under this Agreement to Seller, including the obligation to make full payment of the purchase price. Seller reserves the right to pack or ship orders in the most economical manner, provided that this does not result in increased risk of loss of the Product. However, where Buyer requests special packaging or shipping, any additional cost will be billed to and be the responsibility of Buyer. Buyer acknowledges that Seller cannot accept returns, unless they do not meet the applicable Specifications or are otherwise defective.

6. **Delivery Delays.** Seller shall use reasonable efforts to make prompt deliveries in a commercially reasonable manner. Delivery dates and estimates are, however, not guaranteed. Seller disclaims any liability or responsibility, and Buyer shall hold Seller harmless, for the late or non-delivery of Product. Buyer has no right to delay or defer delivery or acceptance.

7. **Rejection and Revocation of Acceptance; Regulatory Requirements; Product Safety.**

    7.1 <u>Rejection and Revocation of Acceptance</u>. Any rejection or revocation of acceptance of Product by Buyer must be made within thirty (30) days of delivery of Product and any attempted rejection or revocation of acceptance of such Product made thereafter shall be null and void unless agreed to in writing by Seller, except that, notwithstanding the foregoing, in the event that a defect in the Product could not reasonably be discovered within such thirty (30) day period ("Latent Defect"), Buyer shall have the right to reject such Product within fifteen (15) days after discovering the Latent Defect. A rejection or revocation, including rejection or revocation for a Latent Defect, must be made no later than six (6) months from delivery of Product. Failure to make a claim within such period shall be conclusive evidence that the Product was satisfactory in all respects and supplied in accordance with the Specifications. Subject to the foregoing, Buyer shall return the nonconforming Product to Seller in accordance with the reasonable instructions of Seller or, on Seller's request, dispose of such nonconforming Product. In both cases all costs shall be borne by Seller. Should any Product be returned as provided above, Seller shall replace the returned Product as soon as reasonably practicable. Such replacement Product shall be at no additional cost to Buyer if Buyer had previously paid Seller for the returned Product. Each shipment hereunder is to be regarded as a separate and independent sale.

    7.2 <u>Regulatory Requirements</u>. Seller shall keep Buyer reasonably and timely informed of regulatory developments related to Product throughout the Territory. Without limiting the foregoing, Seller represents and warrants that to the best of its knowledge Product may be lawfully sold under the Federal Food, Drug, and Cosmetic Act (as amended, including by the Dietary Supplement Nonprescription Drug Consumer Protection Act).

    7.3 <u>Product Safety</u>. Seller shall promptly inform Buyer in writing of any information concerning or that can potentially impact the safety, identity, strength, quality or purity of any Product of which it becomes aware, and shall provide supporting documentation. Without limiting the foregoing, Seller further agrees to notify Buyer within five (5) days if it receives notice of a serious adverse event, as defined in the Dietary Supplement Nonprescription Drug Consumer Protection Act, associated with an Buyer product containing Product, or to the extent legally obligated to do so.

8. **Term and Termination.**

    8.1 <u>Term</u>. This Agreement shall commence on the Effective Date and shall remain in full force and effect for a term (the "Term") of one (1) year from the Effective Date and continue thereafter in successive one (1) year automatic renewal terms unless terminated in accordance herewith.