8.2  Termination.  This Agreement may be terminated by: (i) any Party upon ninety (90) days prior written notice; (ii) a Party immediately upon the giving of notice if the other Party files a petition for bankruptcy, is adjudicated bankrupt, takes advantage of the insolvency laws of any state, territory or country, or has a receiver, trustee, or other court officer appointed for its property; or, (iii) a Party if an event of Force Majeure (as described in Section 14 of this Agreement) with respect to the other Party shall have continued for ninety (90) days or is reasonably expected to continue for more than one hundred eighty (180) days.

## 9. LIMITED WARRANTY AND DISCLAIMER OF ALL OTHER WARRANTIES.

(a) SELLER WARRANTS THAT THE PRODUCT SOLD HEREUNDER SHALL BE (i) MANUFACTURED IN ACCORDANCE WITH GOOD MANUFACTURING PRACTICES AND APPLICABLE LAWS AND REGULATIONS AND (ii) SHALL CONFORM TO THE SPECIFICATION; (b) EXCEPT AS OTHERWISE PROVIDED IN SECTION 9(a) HEREOF, SELLER HEREBY EXPRESSLY DISCLAIMS ANY AND ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THE PRODUCT, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND NON-INFRINGEMENT. SELLER HAS NOT MADE ANY RECOMMENDATION TO BUYER REGARDING THE USE OR SUBSEQUENT SALE OF THE PRODUCT.  EXCEPT AS PROVIDED IN SECTIONS 7 AND 14, (i) BUYER ASSUMES ALL RISKS AND LIABILITIES FOR ANY LOSS, DAMAGE OR INJURY TO PERSONS OR PROPERTY RESULTING FROM THE USE OR SUBSEQUENT SALE OF THE PRODUCT, EITHER ALONE OR IN COMBINATION WITH OTHER INGREDIENTS NOT SUPPLIED BY SELLER; AND (ii) BUYER HAS SATISFIED ITSELF THAT THE PRODUCT AND THE PURPOSE FOR WHICH IT WILL BE USED AND/OR SOLD IS IN COMPLIANCE WITH THE LAWS OF THE RELEVANT COUNTRIES; (c) BUYER'S EXCLUSIVE REMEDY AND SELLER'S EXCLUSIVE LIABILITY FOR SHIPMENT OF NON-CONFORMING PRODUCT SHALL BE LIMITED TO, AT SELLER'S SOLE OPTION, EITHER REPLACEMENT OF THE NON-CONFORMING PRODUCT OR A REFUND OF THE PURCHASE PRICE PAID.  EXCEPT AS PROVIDED IN SECTIONS 7 AND 14: (x) ALL BREACH OF WARRANTY CLAIMS MADE WITH RESPECT TO THE PRODUCT SHALL BE DEEMED WAIVED BY BUYER UNLESS MADE IN WRITING AND RECEIVED BY SELLER WITHIN THIRTY (30) DAYS OF DELIVERY; (y) BUYER MUST MAKE ANY CLAIM FOR NON-COMFORMING PRODUCT, BREACH OF WARRANTY WITH RESPECT TO THE PRODUCT SOLD, OR ANY CLAIM OF ANY NATURE WHATSOEVER WITH RESPECT TO THE PRODUCT SOLD HEREUNDER IN WRITING WITHIN THIRTY (30) DAYS AFTER BUYER'S RECEIPT OF PRODUCT; AND (z)  BUYER IRREVOCABLY WAIVES AND RELEASES ALL CLAIMS THAT ARE NOT PROPERLY MADE WITHIN SAID PERIOD.

## 10. LIMITATION OF LIABILITY.

TO THE FULLEST EXTENT PERMITTED BY LAW, THE PARTIES WAIVE AND RELINQUISH ANY CLAIMS, DEMANDS, AND CAUSES OF ACTION OR RECOVERIES FOR PUNITIVE DAMAGES OR EXEMPLARY DAMAGES.  IN NO EVENT WILL EITHER PARTY BE LIABLE FOR INDIRECT, SPECIAL, INCIDENTAL OR CONSEQUENTIAL DAMAGES ARISING UNDER THIS AGREEMENT OR OTHERWISE, INCLUDING ANY LOST REVENUES OR PROFITS, CONSEQUENTIAL AND/OR INCIDENTAL DAMAGES, BUSINESS INTERRUPTION OR DAMAGE TO BUSINESS REPUTATION, REGARDLESS OF THE THEORY UPON WHICH ANY CLAIM MAY BE BASED, INCLUDING ANY TORT OR STATUTORY CAUSES OF ACTION. BOTH PARTIES UNDERSTAND AND AGREE THAT THIS LIMITATION OF LIABILITY ALLOCATES RISK OF NONCONFORMING GOODS BETWEEN THE PARTIES AS AUTHORIZED BY THE UNIFORM COMMERCIAL CODE AND OTHER APPLICABLE LAW.  THE PRICES SET FORTH HEREIN REFLECT THIS ALLOCATION OF RISK AND THE LIMITATIONS OF LIABILITY, INCLUDING THE EXCLUSION OF SPECIAL, INDIRECT, CONSEQUENTIAL AND INCIDENTAL DAMAGES, IN THIS AGREEMENT.

**11. Intellectual Property Rights**.  The sale of Product covered by this Agreement shall not confer upon Buyer any license or right under any patents, trade secrets or other proprietary information owned or controlled by Seller, or the right to otherwise utilize such proprietary information, it being specifically understood and agreed

that all such rights are reserved to Seller. Buyer's sole right to use any of Seller's trademarks in connection with the Product or in any manner shall be provided only to the extent expressly set forth in a separate trademark license agreement between Buyer and Seller.

**12. Waiver and Severability.** No claim or right arising out of a breach of this Agreement can be discharged in whole or in part by a waiver or renunciation of the claim or right unless the waiver or renunciation is in writing signed by the aggrieved party. If any term, covenant, warranty, remedy or condition of this Agreement, or the application thereof to any person or circumstance shall, to any extent, be held or deemed invalid or unenforceable, the remainder of this Agreement or the application of such term, covenant or provision, to persons or circumstances other than those to which it is held invalid or unenforceable, shall not be affected thereby, and each remaining term, covenant or provision of this Agreement shall be deemed valid and enforced to the fullest extent permitted by law.

**13. Force Majeure.** A party shall have no liability or obligation to the other party of any kind, including, but not limited to, any obligation to deliver Product or to make payment or accept delivery of Product, arising from any delay or failure to perform all or any part of this Agreement as a result of causes, conduct or occurrences beyond such party's reasonable control, including, but not limited to, commercial impracticability, fire, flood, earthquake, lightning, storm, accidents, act of war, terrorism, civil disorder or disobedience, act of public enemies, problems associated with transportation (including car or truck shortages), shortages of energy or raw materials, acts or failure to act of any state, federal or foreign governmental or regulatory authorities, labor disputes, strikes, or failure of suppliers to make timely deliveries of materials, goods or services. Seller may allocate its available supply among its customers in a manner determined by Seller to be fair and reasonable.

**14. Indemnification and Insurance.**

To the fullest extent permitted by law, Buyer shall defend, indemnify and hold Seller harmless from any and all claims, demands, causes of action, controversy, liabilities, fines, regulatory actions, seizures of product, losses, costs and expenses (including, but not limited to attorneys' fees, expert witness expenses and litigation expenses) (hereinafter "Claim"), arising from or in connection with any Claim asserted by a third party against Seller for any damage, environmental liability, patent or intellectual property infringement caused by Buyer's modification or alteration of the Product, injury, death, loss, property damage, delay or failure in delivery of Buyer's Finished Product or any other Claim asserted by a third party against Seller, whether in tort, contract, breach of warranty or otherwise, relating to Buyer's Finished Product or Buyer's breach of this Agreement. Notwithstanding the foregoing, Buyer has no indemnity obligation to Seller to the extent that any Claims (i) result from the gross negligence or breach of applicable laws by Seller or (ii) are Claims for which Seller is obligated to indemnify Buyer under the following paragraph.

To the fullest extent permitted by law, Seller shall defend, indemnify and hold Buyer harmless from any and all Claims, arising from or in connection with any Claim asserted by a third party against Buyer for any patent or intellectual property infringement in connection with the Product (provided that such alleged infringement does not arise from the combination of the Product with other ingredients not supplied by Seller), injury, death, loss, property damage or any other Claim, whether in tort, contract, breach of warranty or otherwise, relating directly to the Product (except if such injury, death, loss, property damage or other Claim arises from the combination of the Product with other ingredients not supplied by Seller, from the packaging, delivery system, or subsequent handling by Buyer), or Seller's breach of this Agreement. Notwithstanding the foregoing, Seller has no indemnity obligation to Buyer to the extent that any Claims result from the gross negligence or breach of applicable laws by Buyer.

The parties agree, for the Term of this Agreement, to maintain a program of insurance or self-insurance at levels sufficient to satisfy its obligations as set forth in this Agreement.

**15. Confidentiality.**

15.1 Confidential Information. During the Term, and for a period of five (5) years following the termination hereof, each party shall maintain in confidence all Confidential Information disclosed by the other

party, and shall not use, disclose or grant the use of the Confidential Information except on a need-to-know basis to those Affiliates, directors, officers, employees, consultants, clinical investigators, contractors, agents, or permitted assignees, to the extent such disclosure is reasonably necessary in connection with such party's activities as expressly authorized by this Agreement. To the extent that disclosure is authorized by this Agreement, prior to disclosure, each party hereto shall obtain agreement of any such person or entity to hold in confidence and not make use of the Confidential Information for any purpose other than those permitted by this Agreement. Each party shall notify the other promptly upon discovery of any unauthorized use or disclosure of the other party's Confidential Information.

15.2 Terms of this Agreement. Except as otherwise provided in Section 15.1 above, neither party shall disclose any terms or conditions of this Agreement to any Third Party without the prior consent of the other party. Notwithstanding the foregoing, prior to execution of this Agreement, the parties have agreed upon the substance of information that can be used to describe the terms of this transaction, and each party may disclose such information, as modified by mutual agreement from time to time, without the other party's consent.

15.3 Permitted Disclosures. The confidentiality obligations contained in this Section 15 shall not apply to the extent that the receiving party (the "Recipient") is required (a) to disclose information by law, order or regulation of a governmental agency or a court of competent jurisdiction, or (b) to disclose information to any governmental agency for purposes of obtaining approval to test or market a Product product, provided in either case that the Recipient shall provide written notice thereof to the other party and sufficient opportunity to object to any such disclosure or to request confidential treatment thereof.

**16. Relationship.** The relationship between Seller and Buyer shall be that of independent contractors and neither party, its agents and employees, shall under no circumstances be deemed the employees, distributors, franchisees, agents or representatives of the other party.

**17. Assignment and Modification.** The rights and obligations of Buyer under this Agreement shall not be assignable without the prior written consent of Seller; provided, however, that Buyer may, without such consent, assign this Agreement and its rights and obligations hereunder in connection with the transfer or sale of all or substantially all of its business, or in the event of its merger, consolidation, change in control or similar transaction. Any permitted assignee shall assume all obligations of its assignor under this Agreement. This Agreement shall not be modified, altered or amended in any respect except by a writing signed by the parties. Any variation, modification or addition to the terms set forth in this Agreement shall be considered a material modification and shall not be considered part of this Agreement.

**18. Governing Law.** This Agreement and all claims and causes of action shall be governed by and subject to the internal laws (exclusive of the conflicts of law provisions) and decisions of the courts of the State of California. The sole and exclusive venue for all claims and causes of action between the parties shall be the state or federal court located in California.

**19. Notices.** Any demand upon or notice to a Party hereunder shall be effective when delivered by hand or when properly deposited in the mails postage prepaid, or sent by e-mail or electronic facsimile transmission with receipt acknowledged, or delivered to an overnight courier, in each case addressed to the Party at the address shown below or such other address as the Parties may advise in writing.

If to Seller:
    ChromaDex, Inc.
    10005 Muirlands Blvd., Suite G
    Irvine, CA 92618
    Attention: Tom Varvaro
    Fax: 949-419-0294
    Email: tom.varvaro@chromadex.com

If to Buyer:
    Elysium Health, LLC
    200 Congress Park Drive, Suite 205
    Delray Beach, FL 33445
    Attention: CEO
    Fax: _____
    Email: _____

**20. Entire Agreement.** This Agreement and any documents referred to herein contain the complete agreement between the parties with respect to the subject matter hereof. All previous agreements, representations,

warranties, promises and conditions relating to the subject matter of this Agreement are superseded by this Agreement. This Agreement may only be amended by a written instrument duly executed by the Parties hereto.

**21. Counterparts.** This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**IN WITNESS WHEREOF**, the parties have caused this Supply Agreement to be executed by their duly authorized representatives.

| Buyer<br>**ELYSIUM HEALTH, LLC** | Seller<br>**CHROMADEX, INC.** |
|---|---|
| *[signature]*<br>Name:<br>Title: | *[signature]*<br>Name: Frank Jaksch<br>Title: CEO |

# EXHIBIT A
## Product Specification