1  COOLEY LLP
   ANTHONY M. STIEGLER (126414)
2  (astiegler@cooley.com)
   EAMONN GARDNER (310834)
3  (egardner@cooley.com)
   JON F. CIESLAK (268951)
4  (jcieslak@cooley.com)
   SOPHIA M. RIOS (305801)
5  (srios@cooley.com)
   4401 Eastgate Mall
6  San Diego, CA  92121
   Telephone: (858) 550-6000
7  Facsimile:  (858) 550-6420

8  *Attorneys for Plaintiff and Counter-Defendant*
   *ChromaDex, Inc.*

9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12                   **(SOUTHERN DIVISION)**

13

14  ChromaDex, Inc.,                    | Case No.  SACV 16-02277-CJC(DFMx)

15           Plaintiff,                 | **CHROMADEX, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN**

16       v.                            | **SUPPORT OF MOTION TO DISMISS ELYSIUM'S FOURTH AND FIFTH**

17  Elysium Health, Inc.,              | **COUNTERCLAIMS AND/OR STRIKE PATENT MISUSE ALLEGATIONS**

18           Defendant.                | **RELATED TO ELYSIUM'S FIFTH COUNTERCLAIM**

19                                      | Date:       December 4, 2017

20                                      | Time:       1:30 p.m.
                                        | Judge:      Hon. Cormac J. Carney

21  Elysium Health, Inc.,

22           Counterclaimant,

23       v.

24  ChromaDex, Inc.,

25           Counter-Defendant.

26

27

28

**TABLE OF CONTENTS**

PAGE

I.   INTRODUCTION .................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ................................ 2

III. LEGAL STANDARDS ............................................................ 6

     A.   Federal Rule of Civil Procedure 12(b)(6) ................................ 6

     B.   Federal Rule of Civil Procedure 12(b)(1) ................................ 7

     C.   Federal Rule of Civil Procedure 12(f) .................................... 7

     D.   Subject Matter Jurisdiction .................................................. 7

IV.  ELYSIUM'S FOURTH AND FIFTH COUNTERCLAIMS SHOULD BE DISMISSED WITH PREJUDICE. .......................................... 8

     A.   The Court Lacks Subject Matter JURISDICTION OVER Elysium's Fourth Counterclaim for a Declaratory Judgment of Patent Misuse. .................................................................. 8

          1.   ChromaDex's Binding Judicial Covenant Not to Enforce the Trademark License and Royalty Agreement Permanently Eliminated the Case or Controversy Alleged by Elysium. ............. 8

          2.   Elysium Fails to Allege a Controversy of Sufficient Immediacy Regarding a Potential Patent Infringement Suit to Create Article III Jurisdiction. ................................. 11

     B.   The Court Should Dismiss Elysium's Fifth Counterclaim for Unjust Enrichment. ........................................................ 15

          1.   Unjust Enrichment Is Not an Independent Cause of Action under California Law. .............................................. 15

          2.   Elysium Lacks Standing to Bring a Claim for Royalties Paid Under the Trademark License and Royalty Agreement. ............. 16

V.   MOTION TO STRIKE PATENT MISUSE ALLEGATIONS RELATED TO ELYSIUM'S UNJUST ENRICHMENT COUNTERCLAIM. .................. 19

     A.   Elysium's Allegations of Patent Misuse Are Immaterial to the Claims and Defenses In This Action .................................... 19

     B.   The Patent Misuse Allegations Should Be Stricken Because They Are Prejudicial and Will Unnecessarily Complicate Discovery and Trial. ...................................................................... 20

VI.  CONCLUSION ................................................................. 22

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMX)

**TABLE OF AUTHORITIES**

PAGE(S)

**Cases**

*A–Z Int'l v. Phillips*,
323 F.3d 1141 (9th Cir. 2003) ................................................................ 7

*Aetna Life Ins. Co. v. Haworth*,
300 U.S. 227 (1937) ................................................................................ 8

*Already, LLC v. Nike, Inc.*,
568 U.S. 85 (2013) ............................................................ 9, 12, 13, 20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 6

*Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*,
653 F.3d 1329 (Fed. Cir. 2011), *vacated on other grounds*, 467 Fed.
Appx. 890 (Fed. Cir. 2012) .................................................................. 14

*B. Braun Med., Inc. v. Abbott Labs.*,
124 F.3d 1419 (Fed. Cir. 1997) ........................................................... 10

*Baggett v. Hewlett-Packard Co.*,
582 F. Supp. 2d 1261 (C.D. Cal. 2007) ............................................... 16

*Baker Botts L.L.P. v. ASARCO LLC*,
135 S. Ct. 2158 (2015) ......................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................... 6, 12

*Bureerong v. Uvawas*,
922 F. Supp. 1450 (C.D. Cal. 1996) .................................................... 20

*Campbell-Ewald Co. v. Gomez*,
136 S. Ct. 663 (2016) ........................................................................... 17

*City of L.A. v. Lyons*,
461 U.S. 95 (1983) ................................................................................ 12

*CYBERsitter, LLC v. Google Inc.*,
905 F. Supp. 2d 1080 (C.D. Cal. Oct. 24, 2012) ................................. 15

*DeFunis v. Odegaard*,
416 U.S. 312 (1974) .............................................................................. 17

*Derry v. Jackson Nat'l Life Ins. Co.*,
No. SACV 11-0343 DOC (RNBx), 2011 WL 7110571 (C.D. Cal. Oct.
5, 2011) ................................................................................................. 19

*Falk v. Gen. Motors Corp.*,
496 F. Supp. 2d 1088 (N.D. Cal. 2007) ............................................... 16

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

ii.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1
2

TABLE OF AUTHORITIES
(CONTINUED)

PAGE(S)

3

*Fantasy, Inc. v. Fogerty*,
    984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517
4   (1994) ......................................................................................... 7, 19, 20, 21

5

*Ganley v. Cnty. of San Mateo*,
    No. C06-3923 TEH, 2007 WL 902551 (N.D. Cal. Mar. 22, 2007) ................... 7, 20
6

*Gator.com Corp. v. L.L. Bean, Inc.*,
7   398 F.3d 1125 (9th Cir. 2005) ............................................................... 8

8

*Ghirardo v. Antonioli*,
    14 Cal. 4th 39 (1996) ........................................................................ 16
9

*Glob. Med. Sols., Ltd v. Simon*,
10   No. CV12-04686MMM(JCX), 2013 WL 12065418 (C.D. Cal. Sept.
     24, 2013) ................................................................................... 15, 16
11

*Ill. Brick Co. v. Illinois*,
12   431 U.S. 720 (1977) .......................................................................... 21

13

*Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
    599 F.3d 1377 (Fed. Cir. 2010) .............................................................. 14
14

*IV Sols., Inc. v. CIGNA Healthcare of Cal. Inc.*,
15   No. 215-CV-05730-SVW-FFM, 2016 WL 6902457 (C.D. Cal. Jan. 7,
     2016) ..................................................................................... 22
16

*Koratron Co. v. Lion Unif., Inc.*,
17   409 F. Supp. 1019 (N.D. Cal. 1976) ......................................................... 21

18

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
    No. 10-CV-02868-MSK-KMT, 2013 WL 1231875 (D. Colo. Mar. 27,
19   2013) ..................................................................................... 10

20

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) ....................................................................... 10, 18
21

*Lujan v. Defs. of Wildlife*,
22   504 U.S. 555 (1992) .......................................................................... 7

23

*McCauley v. Trans Union, LLC*,
    402 F.3d 340 (2d Cir. 2005) ................................................................. 20
24

*MedImmune, Inc. v. Genentech, Inc.*,
25   549 U.S. 118 (2007) ................................................................ 12, 14, 15

26

*Melchior v. New Line Prods., Inc.*,
    106 Cal. App. 4th 779 (2003) ............................................................... 16
27

*Navarro v. Block*,
28   250 F.3d 729 (9th Cir. 2001) ................................................................. 6

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii.

CHROMADEX'S MPA ISO MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS
SACV 16-2277-CJC (DFMx)

1

**TABLE OF AUTHORITIES**
(CONTINUED)

2                                                                                              **PAGE(S)**

3   *Prasco, LLC v. Medicis Pharm. Corp.*,
        537 F.3d 1329 (Fed. Cir. 2008) ................................................................ 12, 14, 15
4
    *Rattlesnake Coal. v. U.S. E.P.A.*,
5       509 F.3d 1095 (9th Cir. 2007) ................................................................ 8

6   *SanDisk Corp. v. STMicroelectronics, Inc.*,
        480 F.3d 1372 (Fed. Cir. 2007) ................................................................ 12
7
    *Seven Words LLC v. Network Sols.*,
8       260 F.3d 1089 (9th Cir. 2001) ................................................................ 9

9   *Sidney Vinstein v. A.H. Robins Co.*,
        697 F.2d 880 (9th Cir. 1983) ................................................................ 20
10
    *Simon v. E. Kentucky Welfare Rights Org.*,
11      426 U.S. 26 (1976) ................................................................ 17

12  *Spokeo, Inc. v. Robins*,
        136 S. Ct. 1540 (2016) ................................................................ 7
13
    *Sprewell v. Golden State Warriors*,
14      266 F.3d 979 (9th Cir. 2001) ................................................................ 6

15  *Steel Co. v. Citizens for a Better Env't*,
        523 U.S. 83 (1998) ................................................................ 7, 10
16
    *Steffel v. Thompson*,
17      415 U.S. 452 (1974) ................................................................ 8

18  *Sylvania Indus. Corp. v. Visking Corp.*,
        132 F.2d 947 (4th Cir. 1943) ................................................................ 10
19
    *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*,
20      594 F.2d 730 (9th Cir. 1979) ................................................................ 7

21  **Statutes**

22  28 U.S.C. § 2201(a) ................................................................ 8

23  35 U.S.C.
        § 102 ................................................................ 13
24      § 103 ................................................................ 13
        § 311 ................................................................ 13
25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO
                                iv.                  CHROMADEX'S MPA ISO MOTION FOR
                                                     PARTIAL JUDGMENT ON THE PLEADINGS
                                                     SACV 16-2277-CJC (DFMx)

# TABLE OF AUTHORITIES
## (CONTINUED)

PAGE(S)

**Other Authorities**

Fed. R. Civ. P.
  12(b)(1) ........................................................................................... 7, 18
  12(b)(6) ................................................................................................ 6, 16
  12(f) .................................................................................. 2, 7, 19, 20
  12(h)(3) ..................................................................................................... 8
  15 ........................................................................................................ 1, 17

U.S. Const. art. III .................................................................. *passim*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

v.

CHROMADEX'S MPA ISO MOTION FOR
PARTIAL JUDGMENT ON THE PLEADINGS
SACV 16-2277-CJC (DFMx)

## I.    INTRODUCTION

On September 26, 2017, the Court directed defendant and counterclaimant Elysium Health, Inc. ("Elysium") to amend its counterclaim for declaratory judgment of patent misuse to "clarify whether Elysium seeks any relief beyond ChromaDex's covenant not to sue for royalties under" the parties' Trademark License and Royalty Agreement ("TLRA"). (ECF 63 at 2.)  Instead of following the Court's instructions, Elysium filed a Second Amended Counterclaim (ECF 65 ("SACC")) that attempts to allege a new injury and a new cause of action purportedly giving rise to the Court's jurisdiction.  However, Elysium's new theory is directly contrary to binding Federal Circuit precedent, which holds that damages are not recoverable in a patent misuse declaratory relief claim, and further that interest, lost opportunity costs, and attorneys' fees are not available.  Moreover, Elysium relies on a non-existent "implied" threat that ChromaDex will sue it for patent infringement, which is insufficient as a matter of law to invoke this court's Article III jurisdiction. (SACC ¶ 99.)  Contrary to Elysium's rhetoric, the SACC allegations show that ChromaDex has never accused Elysium of patent infringement, let alone taken any affirmative acts indicating that it will imminently file such a suit.

Elysium's SACC also exceeds the Court's directive and disregards Federal Rule of Civil Procedure 15, by adding a new counterclaim for unjust enrichment, which is merely a remedy in California, and not a cognizable cause of action.  The alleged predicate of this phantom claim are the royalties Elysium paid to ChromaDex under the Trademark License Agreement ("TLRA") and that ChromaDex already bound itself with this Court to return as a credit against the $3 million that Elysium owes ChromaDex for failing to pay for product it purchased.  Both of Elysium's claims would require the Court to litigate the relief that ChromaDex has already covenanted to provide in this proceeding. Both of Elysium's latest creative attempts should fail.

First, Elysium's SACC does not allege sufficient facts demonstrating an actual Article III case or controversy to support Elysium's claim for a declaratory judgment of

patent misuse.  Elysium does not allege that it seeks any legally cognizable relief beyond the withdrawal with prejudice of ChromaDex's claim to enforce the TLRA, which ChromaDex already did in response to the Court's order on ChromaDex's motion to dismiss Elysium's First Amended Counterclaims ("FACC").  Stated another way, the relief now sought in the SACC was already given by ChromaDex in response to the Court's order on ChromaDex's first motion to dismiss, and was given to directly address the Court's subject matter jurisdiction concern.   As to Elysium's new claim that there is an "inferred" dispute regarding patent infringement, Elysium alleges no affirmative acts by ChromaDex showing that there is an actual case or controversy, let alone one of sufficient immediacy and reality to invoke and support this Court's limited jurisdiction.

Second, Elysium's new "counterclaim" for unjust enrichment is a nullity because unjust enrichment is only a remedy in California and not an independent cognizable cause of action.   Even if it was a viable claim, Elysium would lack standing to assert it given ChromaDex's covenant to return the TLRA royalties as a credit against ChromaDex's damages in this case.

Finally, if the Court does not dismiss Elysium's unjust enrichment counterclaim, it should strike as immaterial all patent misuse allegations from the claim. The enforceability of the TLRA due to alleged patent misuse is immaterial because ChromaDex made its binding covenant not to enforce the TLRA's royalty provisions. Elysium's patent misuse allegations in this context are fictional, extending the theory beyond any other decided cases and thus present the exact situation for which Rule 12(f) was designed—streamlining litigation to the issues which must actually be decided, rather than asking the court to make advisory rulings.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

ChromaDex sells NIAGEN in bulk, a trademarked name for nicotinamide riboside ("NR"), and other health supplement ingredients to retail facing customers across the country, one of which was Elysium.  (ECF 48 ¶ 11 (ChromaDex's Third Amended Complaint ("TAC")).)  Elysium sells one product, "Basis," which combines

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

2.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

NIAGEN and pTeroPure, a trademarked name for pterostilbene, also sold by ChromaDex.  (TAC ¶ 2.)  ChromaDex sold—and Elysium promised to pay for—NIAGEN and pTeroPure pursuant to three contracts: (1) the "NIAGEN Supply Agreement" (as amended); (2) the "pTeroPure Supply Agreement, (together with the NIAGEN Supply Agreement, the "Supply Agreements"); and (3) a Trademark License and Royalty Agreement ("TLRA").  (TAC ¶ 16.)  The NIAGEN Supply Agreement and the Trademark License and Royalty Agreement were terminated effective February 3, 2017, when in late 2016, long after the expiration of Elysium's 60-day period to pay had expired and after Elysium in multiple discussions with several ChromaDex representatives refused to settle the dispute over the unpaid orders without injecting other, extraneous conditions, ChromaDex notified Elysium in writing that, as permitted by the NIAGEN Supply Agreement, following the expiration of the agreement on February 3, 2017, ChromaDex would not renew the agreement.  (TAC ¶¶ 16, 55.)

Elysium failed to pay for nearly $3 million worth of NIAGEN and pTeroPure that it ordered and received in 2016.  (TAC ¶¶ 31, 38.)  Accordingly, on December 29, 2016, ChromaDex filed its Complaint against Elysium for breach of contract.  (ECF 1.)  In its third cause of action, ChromaDex sought damages under the TLRA for unpaid royalties by Elysium.  In response, Elysium counterclaimed against ChromaDex for, among other things, a declaratory judgment of patent misuse.  (ECF 11; ECF 31 (Elysium's First Amended Counterclaims ("FACC")).)  Elysium contended that ChromaDex misused its NR patent rights by "tying of access to its patent rights to a royalty-bearing trademark license" in the TLRA.  (FACC ¶ 113.)  Elysium sought a declaratory judgment of patent misuse and a judgment "[e]njoining ChromaDex from enforcing the [Trademark] License and Royalty Agreement."  (FACC at 24.)

ChromaDex moved to dismiss Elysium's declaratory judgment for patent misuse claim as frivolous and unsupported as a viable claim in these circumstances.  (ECF 34.)  ChromaDex pointed out that patent misuse is not a cognizable affirmative claim, but rather only an affirmative defense to patent infringement, and, regardless, that its

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

3.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1    conduct did not constitute misuse as a matter of law.  (ECF 34-1 at 11–15.)  In its

2    Opposition, Elysium argued that the claim was legally cognizable because

3    ChromaDex's claim to enforce the royalty provisions of the TLRA created a case or

4    controversy supporting the Court's jurisdiction over its claim.  Elysium stated:

5           A case or controversy plainly exists here.  ChromaDex, in Count 3 of its
            Complaint, seeks to enforce the royalty requirement in the parties'
6           Trademark Agreement.   Elysium seeks to enjoin enforcement of the
            Trademark Agreement's royalty requirement due to ChromaDex's patent
7           misuse.

8    (ECF 38 at 15.)   The Court agreed with Elysium, although ChromaDex believes that

9    was error.  On May 10, 2017, the Court denied ChromaDex's motion to dismiss the

10   declaratory judgment counterclaim, finding that "*[a] case or controversy exists here*

11   *because ChromaDex seeks to enforce the royalty requirement in the parties' Agreement,*

12   *and Elysium contends that the royalty requirement is unenforceable due to patent*

13   *misuse.*"  (ECF 44 at 17 (emphasis added).)

14          Rather than contesting the Court's conclusion, ChromaDex practically addressed

15   the concern on May 25, 2017, by filing a Second Amended Complaint ("SAC") that

16   explicitly omitted, renounced, and abandoned its claim for unpaid royalties under the

17   TLRA.  (ECF 45).  In the SAC, ChromaDex made a binding statement and covenant

18   that

19          to eliminate an issue from this litigation, to conserve the parties' and the
            Court's resources and to streamline this action, and without prejudice to
20          ChromaDex's arguments and contentions, ChromaDex restates that it has
            already terminated the Trademark License and Royalty Agreement on
21          February 2, 2017 and further, hereby unequivocally renounces any rights
            to collect, charge, or obtain royalties under the [agreement] with Elysium.
22
23   (SAC ¶ 91.)  ChromaDex further stated:

24          Pursuant to Section 14.1 of the Trademark License and Royalty Agreement
            and ChromaDex's notice sent to Elysium on October 31, 2016, the
25          Trademark License and Royalty Agreement was permanently terminated
            along with the NIAGEN Supply Agreement, effective February 2, 2017.
26          Accordingly, the allegedly offending terms of the Trademark License and
            Royalty Agreement as alleged by Elysium are no longer of any operative
27          effect.

28   (SAC ¶ 91.  ChromaDex further represented in a binding statement that ChromaDex

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

4.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1    "will provide a credit to Elysium for all past royalties against the damages owed by

2    Elysium in this case, including for the failure to pay for product purchased."  (SAC

3    ¶ 93.)

4          On June 7, 2017, ChromaDex filed its TAC, voluntarily withdrawing a previously

5    asserted trade secret misappropriation claim, to simplify this case, and asserting only

6    two causes of action for Elysium's breach of the parties' supply contracts by failing to

7    pay for $3 million of NIAGEN and pTeroPure.   The TAC included the identical

8    covenants and statements permanently renouncing the claim for unpaid royalties under

9    the TLRA.  (*Compare* SAC ¶¶ 91, 93 *with* TAC ¶¶ 62, 64.)  Elysium answered the TAC

10   and restated the FACC, still including its claim for a declaratory judgment of patent

11   misuse despite the fact that ChromaDex no longer (1) sought to enforce the royalty

12   provision in the TLRA, (2) renounced all rights under it, and (3) bound itself to credit

13   Elysium for all past royalties paid against damages owed to ChromaDex for Elysium's

14   non-payment of product.  (ECF 51.)

15         On August 14, 2017, ChromaDex filed a motion for partial judgment on the

16   pleadings on Elysium's declaratory judgment counterclaim, arguing that the Court did

17   not have subject matter jurisdiction to decide the claim given ChromaDex's binding

18   judicial covenant not to enforce the TLRA. (ECF 56.) Elysium opposed the motion,

19   arguing it had not received "all" the relief it was entitled to and presenting, for the first

20   time, a theory that the Court's jurisdiction over the claim was premised on an unstated

21   threat of a future dispute between the parties regarding patent infringement. (ECF 60.)

22   On September 26, 2017, the Court denied ChromaDex's motion without prejudice, but

23   directed Elysium to file an amended patent misuse counterclaim to "clarify whether

24   Elysium seeks any relief beyond ChromaDex's covenant not to sue for royalties under

25   the TLRA." (ECF 63 at 2.)

26         On October 11, 2017, Elysium far exceeded the Court's order by filing a SACC

27   amending its declaratory judgment of patent misuse counterclaim *and* adding an

28   additional new claim for unjust enrichment seeking restitution of the royalties paid

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

5.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1   under the TLRA, but already conceded by ChromaDex with its judicial covenant to

2   credit them against what Elysium owes ChromaDex in this case. Elysium's amended

3   declaratory judgment counterclaim alleges that, because it "sells Basis using NR that is

4   not sourced from ChromaDex" (SACC ¶ 95) and ChromaDex has made "public

5   statements" that "impliedly threaten" Elysium with patent litigation (SACC ¶¶ 96–99),

6   "ChromaDex has created a reasonable apprehension of imminent patent litigation

7   against Elysium" (SACC ¶ 99). Elysium further baldly alleges, without any factual basis

8   whatsoever, that ChromaDex has not purged the alleged patent misuse. (SACC ¶¶ 101–

9   09.) Moreover, in the new unjust enrichment claim, Elysium asserts the TLRA was

10  "unlawful and unenforceable" because its terms "constituted patent misuse," and it "is

11  entitled to restitution of royalties paid" under the TLRA, "plus interest and attorneys'

12  fees." (SACC ¶¶ 145, 147, 150.) Elysium's claims are tautological and fail to state

13  viable claims.

## III.   LEGAL STANDARDS

### A.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

Rule 12(b)(6) requires dismissal when a plaintiff has failed to present a
cognizable legal theory or to allege sufficient facts supporting a cognizable legal theory.
*Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a court resolving a motion
to dismiss must accept as true "all the allegations in the complaint," it need not accept
"labels and conclusions" or "a formulaic recitation of the elements of a cause of action."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A court must
identify and disregard unreasonable inferences, unwarranted deductions of fact, or legal
characterizations in the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979,
988 (9th Cir. 2001). After accepting only the well-pleaded allegations as true, a court
then determines whether a complaint alleges a "plausible" claim to relief. *Ashcroft v.
Iqbal*, 556 U.S. 662, 677–79 (2009).

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

6.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

**B.    FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)**

Rule 12(b)(1) requires dismissal where a plaintiff has not established standing to sue under Article III of the United States Constitution. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998). When evaluating a motion under Rule 12(b)(1), "[n]o presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.* (quoting *Thornhill Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979)). A plaintiff bears the burden of alleging facts sufficient to establish (1) an injury in fact, (2) that the injury was caused by the challenged conduct, and (3) that a favorable decision will redress the injury. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To satisfy the "injury in fact" requirement, a plaintiff must show they "have suffered . . . an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citation and internal quotation marks omitted).

**C.    FEDERAL RULE OF CIVIL PROCEDURE 12(F)**

A defendant may move to strike from a complaint "any redundant, immaterial, or impertinent and scandalous matter." Fed. R. Civ. P. 12(f). "In the Ninth Circuit, motions to strike are proper, even if the material is not prejudicial to the moving party, if granting the motion would make trial less complicated or otherwise streamline the ultimate resolution of the action." *Ganley v. Cnty. of San Mateo*, No. C06-3923 TEH, 2007 WL 902551, at *2 (N.D. Cal. Mar. 22, 2007) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)).

**D.    SUBJECT MATTER JURISDICTION**

Federal courts are, of course, courts of limited jurisdiction. "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (citation omitted). Therefore "[o]nce challenged, the party asserting subject matter jurisdiction has the

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

7.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

burden of proving its existence." *Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1102 n.1 (9th Cir. 2007). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3); *see also Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("[A]n actual controversy must be extant at all stages of review . . . .").

"The limitations that Article III imposes upon federal court jurisdiction are not relaxed in the declaratory judgment context." *Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1129 (9th Cir. 2005). The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Act refers to the type of "Cases" and "Controversies" that are justiciable under Article III. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239–40 (1937); *see* U.S. Const. art. III, § 2, cl. 1.

## IV. ELYSIUM'S FOURTH AND FIFTH COUNTERCLAIMS SHOULD BE DISMISSED WITH PREJUDICE.

### A. THE COURT LACKS SUBJECT MATTER JURISDICTION OVER ELYSIUM'S FOURTH COUNTERCLAIM FOR A DECLARATORY JUDGMENT OF PATENT MISUSE.

Despite being given another chance to allege facts supporting the Court's subject matter jurisdiction, Elysium failed to plead a justiciable case or controversy for patent misuse regarding the assertion or enforceability of ChromaDex's patent rights. No actual dispute regarding ChromaDex's patent rights presently exists between these parties and no potential controversy is of sufficient immediacy to warrant a declaratory judgment. Elysium is asking for a pure advisory opinion where no case or controversy exists.

#### 1. CHROMADEX'S BINDING JUDICIAL COVENANT NOT TO ENFORCE THE TRADEMARK LICENSE AND ROYALTY AGREEMENT PERMANENTLY ELIMINATED THE CASE OR CONTROVERSY ALLEGED BY ELYSIUM.

As confirmed by this Court, subject matter jurisdiction over Elysium's original

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

8.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1    declaratory judgment counterclaim rested on ChromaDex's claim for breach of the
2    TLRA. (ECF 44 at 17 ("A case or controversy exists here because ChromaDex seeks
3    to enforce the royalty requirement in the parties' Agreement, and Elysium contends that
4    the royalty requirement is unenforceable due to patent misuse.").) The SACC does not
5    contend that ChromaDex's claim for breach of the TLRA is still at issue and indeed,
6    concedes that ChromaDex "unequivocally renounce[d] any rights to collect, charge, or
7    obtain royalties under the [agreement] with Elysium." (SACC ¶ 101 (quoting TAC
8    ¶ 62).)  Accordingly, it is clearly established that Elysium's "only legally cognizable
9    injury" under its declaratory relief claim is now gone and, given the breadth of the
10   covenant, cannot reasonably be expected to recur. *Already, LLC v. Nike, Inc.*, 568 U.S.
11   85, 100 (2013); *Seven Words LLC v. Network Sols.*, 260 F.3d 1089, 1098–99 (9th Cir.
12   2001) (A court has jurisdiction over a declaratory judgment action "only when the
13   challenged . . . activity . . . has not evaporated or disappeared, and, by its continuing and
14   brooding presence, casts what may well be a substantial adverse effect on the interests
15   of the . . . parties." (citation omitted)).

16   The only grounds Elysium falsely asserts for finding that a case or controversy
17   remains as to the TLRA, is that the claim is still live because "ChromaDex has not . . .
18   actually returned any royalties paid by Elysium under the [TLRA] and, on information
19   and belief, has not repaid any other customers. ChromaDex has not paid interest on
20   those monies or for the opportunity cost to Elysium . . . , and it has not repaid the costs
21   and attorneys' fees incurred by Elysium due to ChromaDex's attempts to enforce its
22   unlawful [TLRA]." (SACC ¶ 137.)

23   These alleged failings by ChromaDex do nothing to preserve the former case or
24   controversy. Elysium's claim is moot because (1) a declaratory judgment of patent
25   misuse provides <u>none</u> of the relief Elysium seeks; (2) none of the actions Elysium
26   alleges ChromaDex has failed to take are necessary to purge the alleged patent misuse;
27   and (3) whether ChromaDex has purged the patent misuse is only relevant to the extent
28   that the substantive merits of the declaratory judgment of patent misuse (enforcing the

9.

1    TLRA) claim is still live, which it is clearly not.  ChromaDex has unequivocally

2    renounced the enforcement of the TLRA as a practical means of streamlining this case.

3        Elysium has already obtained <u>all</u> relief potentially available to it under a

4    declaratory judgment counterclaim—the cessation of the enforcement of the TLRA.

5    Patent misuse is only an affirmative defense which "simply renders the patent

6    unenforceable." *B. Braun Med., Inc. v. Abbott Labs*., 124 F.3d 1419, 1428 (Fed. Cir.

7    1997). The binding Federal Circuit precedent clearly holds and teaches that "***monetary***

8    ***damages may <u>not</u> be awarded 'under a declaratory judgment counterclaim based on***

9    ***patent misuse.***'" *Id*. (emphasis added). Thus, Elysium's new allegations that it has not

10   received monetary damages—consisting of past royalties paid, interest, and lost

11   opportunity costs—are insufficient as a matter of law and do not support federal court

12   jurisdiction.  Elysium must be aware of this Federal Circuit precedent, yet it creatively

13   pleads the SACC, apparently seeking to misdirect the Court into committing error.

14   Nor does a baseless claim for costs and attorney's fees support the Court's subject

15   matter jurisdiction. "[I]nterest in attorney's fees is, of course, insufficient to create an

16   Article III case or controversy where none exists on the merits of the underlying claim."

17   *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990); *see also Steel Co.*, 523 U.S. at

18   107 ("Obviously, however, a plaintiff cannot achieve standing to litigate a substantive

19   issue by bringing suit for the cost of bringing suit.").  As a matter of law, Elysium's

20   new allegations are directly contrary to binding Federal Circuit precedent.

21       Second, the allegations regarding ChromaDex's purported failure to purge the

22   alleged misuse do not, and cannot, support the Court's jurisdiction. None of the actions

23   that Elysium now alleges ChromaDex failed to take are necessary to purge patent

24   misuse.  Fundamentally, damages and restitution are not part of the purge analysis. *See,*

25   *e.g.*, *Sylvania Indus. Corp. v. Visking Corp.,* 132 F.2d 947, 958 (4th Cir. 1943) (holding

26   that plaintiff had purged the patent misuse after finding that "it is the policy of the

27   executive officers of the plaintiff to no longer conduct its business in the manner which

28   the court criticized"); *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-CV-

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

10.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

02868-MSK-KMT, 2013 WL 1231875, at *5 (D. Colo. Mar. 27, 2013) ("A successful invocation of the doctrine of patent misuse results in the patent being rendered unenforceable until the misuse is purged (*i.e. the abusive licensing term or contract condition is withdrawn), but does not give rise to an award of damages to the accused infringer.*" (emphasis added)).

Moreover, the issue of whether any alleged patent misuse was purged presupposes that the Court has Article III jurisdiction to consider Elysium's declaratory relief claim in the first instance, which it does not in this case. By renouncing the TLRA, ChromaDex removed the basis for the exercise of the Court's limited jurisdiction. The question of "purge" would only come up in a subsequent dispute, if ChromaDex sued Elysium for patent infringement, and if Elysium alleged that patent misuse is an equitable affirmative defense to the infringement allegation. In that extremely hypothetical scenario a court would have to decide whether ChromaDex's actions were sufficient to moot Elysium's affirmative defense. Here, there is no actual live controversy as to the enforcement of ChromaDex's patent rights. Further, as addressed below, Elysium has not adequately alleged an actual case or controversy of sufficient immediacy or reality regarding patent infringement to support this court's exercise of Article III jurisdiction.

There is no further relief for the Court to provide on Elysium's declaratory relief claim because no damages, restitution, or attorney's fees are available under the claim— which Elysium knew before filing its SACC. The only relief available would have been a declaration that ChromaDex's claim for breach of the TLRA with respect to royalties was unenforceable, but that claim is now irrevocably gone because ChromaDex conceded the point to streamline the case.

## 2. ELYSIUM FAILS TO ALLEGE A CONTROVERSY OF SUFFICIENT IMMEDIACY REGARDING A POTENTIAL PATENT INFRINGEMENT SUIT TO CREATE ARTICLE III JURISDICTION.

Given that ChromaDex's covenant not to enforce the TLRA nullified the original underlying controversy supporting its declaratory judgment counterclaim, Elysium

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

11.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1   alleges that a potential dispute regarding patent infringement is "of sufficient
2   immediacy and reality to warrant relief with respect to a determination of the
3   enforceability of ChromaDex's patent rights." (SACC ¶ 143.) However, the allegations
4   concerning both Elysium's conduct and ChromaDex's conduct fail to support Elysium's
5   conclusory assertion. *See Bell Atl. Corp.*, 550 U.S. at555  (the court need not accept as
6   true "labels and conclusions" or "a formulaic recitation of the elements of a cause of
7   action").

8        To establish the Court's subject matter jurisdiction for a declaratory judgment,
9   Elysium must allege ***facts*** showing there is a "substantial controversy, between parties
10  having adverse legal interests, of sufficient immediacy and reality to warrant the
11  issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*,
12  549 U.S. 118, 127 (2007). "This 'immediacy and reality' inquiry can be viewed through
13  the lens of standing." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1338 (Fed.
14  Cir. 2008) (citation omitted).

15       Elysium does not allege that it currently suffers *any* injury from a potential patent
16  infringement suit.  Instead, it alleges the threat of a *hypothetical future* injury adequately
17  gives rise to the Court's present jurisdiction over the claim.  But the Supreme Court has
18  emphasized that "it is the *reality* of the threat of . . . injury that is relevant to the standing
19  inquiry, not the plaintiff's subjective apprehensions." *City of L.A. v. Lyons,* 461 U.S.
20  95, 107 n.8 (1983) (emphasis in original).  Elysium must show "this threat [is] real,
21  imminent, and traceable to [ChromaDex]." *Prasco*, 537 F.3d at 1339.  To demonstrate
22  sufficient "reality" of the alleged threat, Elysium must establish (1) "that it engages in
23  or has sufficiently concrete plans to engage in [infringement]," *Already*, 568 U.S. at 94–
24  95; and (2) "some affirmative act" by ChromaDex to enforce its patent rights. *SanDisk
25  Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1380–81 (Fed. Cir. 2007). Elysium
26  fails to establish either required element.

27       As to its own conduct, Elysium's two vague allegations are insufficient to
28  establish that it fears a patent infringement suit. First, Elysium states that "[d]espite the

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

12.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

termination of the NR Supply Agreement, Elysium in fact does intend to continue, and has continued, to supply its customers with Basis, both now and in the future." (SACC ¶ 94.)  Second, Elysium states that "Elysium sells Basis using NR that is not sourced from ChromaDex." (SACC ¶ 95.)  These statements lack a crucial element necessary to show an existing dispute—they do not admit or even state that Elysium's sales *infringe* ChromaDex's patents.  *Cf. Already*, 568 U.S. at 95 (holding the Court did not have jurisdiction because the declaratory judgment plaintiff "never stated that these shoes would arguably infringe Nike's trademark").  Elysium failed to allege the crucial element—the *sine quo non* of the claim—and accordingly, there are no grounds to assume, let alone conclude, that Elysium's conduct subjects it to the risk of a patent infringement lawsuit.

Elysium's allegations are even weaker with respect to any alleged conduct by ChromaDex.  Elysium fails to identify *any* affirmative acts by ChromaDex evidencing an imminent intent to sue Elysium for patent infringement. Elysium concludes that "ChromaDex's public statements" have "impliedly threaten[ed] Elysium with the assertion of ChromaDex's patent estate." (SACC ¶ 99.) To support its conclusion, Elysium only alleges that, on an August 2017 earnings call, ChromaDex's CEO stated that "ChromaDex has a comprehensive global patent portfolio of 16 patents and applications spanning the processing use and composition of nicotinamide riboside. We will vigorously *defend* this estate." (SACC ¶ 97 (emphasis added).)[1] Elysium further

---

[1] A general statement that a company would defend its intellectual property rights does not give rise to subject matter jurisdiction here.  Dartmouth College will be *defending* its rights to two patents (which it exclusively licenses to ChromaDex) by responding to two petitions for *inter partes* review requested by Elysium at the United States Patent and Trademark Office.  "*Inter partes* review is a trial proceeding conducted at the [USPTO] to review the patentability of one or more claims in a patent only on a ground that could be raised under §§ 102 or 103, and only on the basis of prior art consisting of patents or printed publications."  *See* https://www.uspto.gov/patents-application-process/appealing-patent-decisions/trials/inter-partes-review; 35 U.S.C. § 311. Because of the limited grounds considered in an *inter partes* review, Elysium's patent

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

13.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

alleges that on the same call ChromaDex's President and Chief Strategy Officer stated that Elysium was "try[ing] to copy the ingredient and manufacture it who knows where . . . ." (SACC ¶ 98.)

Black letter law instructs that Elysium's allegations are insufficient to create a case or controversy regarding patent infringement. In particular, Elysium's allegations do not show an affirmative act by ChromaDex to enforce its patent rights, or even an accusation that Elysium is infringing any of ChromaDex's patents, and therefore cannot support subject matter jurisdiction. *Ass'n for Molecular Pathology v. U.S. Patent & Trademark Office*, 653 F.3d 1329, 1348 (Fed. Cir. 2011) (reversing a finding of standing where "[t]he district court failed to limit its jurisdictional holding to affirmative acts by the patentee directed at [the specific declaratory judgment plaintiff]"), *vacated on other grounds*, 467 Fed. Appx. 890 (Fed. Cir. 2012); *see also Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (holding that general acts by the patentee do not "in the absence of any act directed toward [the declaratory judgment plaintiff], meet the minimum standard discussed in *MedImmune*.").

In *Prasco, LLC v. Medicis Pharm. Corp.*, the Federal Circuit considered a declaratory judgment plaintiff's similar allegations that the threat of future patent litigation gave rise to declaratory judgment jurisdiction. 537 F.3d at 1339. Considering the totality of the circumstances, the court clearly found the allegations insufficient:

> defendants have not accused [plaintiff] of infringement or asserted any rights to [plaintiff's product], nor have they taken any actions which imply such claims. . . . The defendants' lack of any "concrete claim of a specific right" is an important factor weighing against a finding of an actual controversy, particularly given that there has been no actual injury. The lack of any evidence that the defendants believe or plan to assert that the plaintiff's product infringes their patents creates a high barrier to proving that [plaintiff] faces an imminent risk of injury. Moreover, not only have the defendants not taken a concrete position adverse to [plaintiff's], but they *also have taken no affirmative actions at all related to [plaintiff's] current product*.

*Id.* at 1340 (emphasis added). Similarly, the facts alleged by Elysium show that, while

misuse allegations are irrelevant to that dispute as well.

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

14.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

ChromaDex is aware that Elysium is selling NR from another source (SACC ¶ 97), it *has not* accused Elysium of patent infringement, it *has not* taken any actions which imply such a claim, it *has not* made plans to assert that Basis infringes its patent rights, and it *has not* taken any affirmative action to enforce its patent rights against Elysium. There are, therefore, **no facts** to support a finding that the alleged threat of future harm is "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127.

The *Prasco* court also considered—and rejected—an allegation that a failure to provide a covenant not to sue for patent infringement created an Article III case or controversy, another argument Elysium makes here. The Federal Circuit found that "a defendant's failure to sign a covenant not to sue . . . is **not sufficient** to create an actual controversy—some affirmative actions by the defendant will also generally be necessary." 537 F.3d at 1341 (emphasis added). Accordingly, Elysium's allegation that "ChromaDex has not provided Elysium with any covenant not to sue . . . to enforce ChromaDex's patent estate against Elysium," is also not probative of an actual controversy in the absence of any alleged affirmative conduct. (SACC ¶ 142.)

Elysium's amended counterclaims thus fail to provide an alternate ground on which the Court could find subject matter jurisdiction over Elysium's declaratory judgment counterclaim and the counterclaim should be dismissed with prejudice.

**B.      THE COURT SHOULD DISMISS ELYSIUM'S FIFTH COUNTERCLAIM FOR UNJUST ENRICHMENT.**

**1.      UNJUST ENRICHMENT IS NOT AN INDEPENDENT CAUSE OF ACTION UNDER CALIFORNIA LAW.**

Courts in this circuit have applied the rule that "under California law, there is no cause of action for unjust enrichment.  Rather, unjust enrichment is a legal theory that permits recovery on <u>other</u> recognized causes of action." *Glob. Med. Sols., Ltd v. Simon*, No. CV12-04686MMM(JCX), 2013 WL 12065418, at *38 (C.D. Cal. Sept. 24, 2013) (emphasis added); *see also CYBERsitter, LLC v. Google Inc.*, 905 F. Supp. 2d 1080, 1088 (C.D. Cal. Oct. 24, 2012) (dismissing unjust enrichment claim after finding that

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

15.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1   "federal courts in California have ruled that unjust enrichment is not an independent

2   cause of action" (citing *Vicuna v. Alexia Foods, Inc.,* No. C 11–6119 PJH, 2012 WL

3   1497507 at *3 (N.D. Cal. April 27, 2012))); *Melchior v. New Line Prods., Inc*., 106 Cal.

4   App. 4th 779, 793 (2003) ("The phrase 'unjust enrichment' does not describe a theory

5   of recovery, but an effect: the result of a failure to make restitution under circumstances

6   where it is equitable to do so" (*quoting Lauriedale Assocs. Ltd. v. Wilson*, 7 Cal. App.

7   4th 1439, 1448 (1992))).

8        This Court should not be distracted or confused by some federal courts' incorrect

9   musings that "California courts 'appear to be split on whether unjust enrichment can be

10  an independent claim or merely an equitable remedy.'" *Baggett v. Hewlett-Packard*

11  *Co.*, 582 F. Supp. 2d 1261, 1270 (C.D. Cal. 2007) (quoting *Falk v. Gen. Motors Corp.*,

12  496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007)). There is no actual split. *Global Medical*

13  *Solutions, Ltd. v. Simon* examined the purported split and found that in reality there is

14  no split at all. 2013 WL 12065418, at *38. The court found that the California case

15  often cited to stand for the proposition that unjust enrichment is an independent cause

16  of action, *Ghirardo v. Antonioli*, 14 Cal. 4th 39 (1996), did "not address whether unjust

17  enrichment is a cognizable cause of action." 2013 WL 12065418, at *38. After

18  analyzing the relevant case law, the court held and accurately confirmed "that under

19  California law, there is no cause of action for unjust enrichment. Rather, unjust

20  enrichment is a legal theory that permits recovery on other recognized causes of action."

21  *Id*. Elysium's "cause of action" for unjust enrichment was filed without an adequate

22  legal basis and obviously is an effort to save its patent misuse theory through legal

23  gymnastics and contrived opaqueness. This Court should dismiss Elysium's fifth claim

24  for unjust enrichment for failure to state a claim under Rule 12(b)(6) because it is not a

25  cognizable cause of action under California law.

26        **2.   ELYSIUM LACKS STANDING TO BRING A CLAIM FOR ROYALTIES
          PAID UNDER THE TRADEMARK LICENSE AND ROYALTY
27        AGREEMENT.**

28        Moreover, even if unjust enrichment was a viable standalone cause of action in

California, Elysium would lack standing to assert it.  Elysium claims it "is entitled to
restitution of royalties paid under the unlawful License and Royalty Agreement, plus
interest and attorneys' fees."  (SACC ¶ 150.)  However, ChromaDex has already
covenanted to "provide a credit to Elysium for ***all past royalties*** against the damages
owed by Elysium in this case."  (TAC ¶ 64 (emphasis added).)  Elysium has thus
disregarded Federal Rule of Civil Procedure 15, by adding a counterclaim seeking relief
which ChromaDex has already bound itself before this Court to provide.

ChromaDex does not contest Elysium's entitlement to the funds it seeks and has
already covenanted to return the monies to Elysium.  In other words, a determination
by the Court of Elysium's unjust enrichment claim "is no longer necessary to compel
that result, and could not serve to prevent it." *DeFunis v. Odegaard*, 416 U.S. 312, 317
(1974) (finding no jurisdiction because case was moot).  Elysium has shown no "injury
to [itself] that is likely to be redressed by a favorable decision." *Simon v. E. Kentucky
Welfare Rights Org.*, 426 U.S. 26, 38 (1976).  "Absent such a showing, exercise of its
power by a federal court would be gratuitous and thus inconsistent with the Art. III
limitation." *Id.*

Elysium's allegation that "ChromaDex has not reimbursed Elysium for any
royalties paid under the License and Royalty Agreement," does not take Elysium over
the necessary jurisdictional hurdle and is insufficient to create standing.  (SACC ¶ 149.)
Premising its injury on the fact that it has not *actually received* the funds would elevate
form over substance where, as here, Elysium admits to not paying ChromaDex nearly
$3 million for product Elysium ordered and ChromaDex shipped.  (ECF 51 ¶¶ 31
(admitting that "The total amount ChromaDex invoiced Elysium for the Past Due
Invoices is $2,983,350.") and 38 (admitting that "Elysium has not paid what
ChromaDex has demanded."); *see also* TAC ¶¶ 31, 38.)  In this situation, ChromaDex's
statements to the Court have created a lasting and binding obligation to refund the much
smaller royalty amount, as an offset or credit to the damages for which Elysium is liable
in this collection case.  *Cf. Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016)

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

17.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1 (finding "an unaccepted settlement offer" did not moot the case only because there was

2 "no lasting right or obligation.").

3      Neither does Elysium's request for interest give it standing.  (SACC ¶ 150.)

4 ChromaDex does not contest Elysium's right to interest on the royalties paid.  Indeed,

5 ChromaDex's commitment to refund past royalty payments as credit against the

6 damages owed by Elysium, which also bear interest, necessarily includes interest.

7 ChromaDex hereby represents to the Court and to Elysium that interest should be

8 included when calculating the credit due to Elysium for past royalties in the Court's

9 ultimate judgment, just as interest will be due on the $3 million owed to ChromaDex.

10      Further, even if there was a viable cause of action for unjust enrichment in

11 California, which there is not, a successful action would not entail an award of

12 attorney's fees.  *Baker Botts L.L.P. v. ASARCO LLC*, 135 S. Ct. 2158, 2164 (2015)

13 (stating that the Supreme Court will "recognize[] departures from the American Rule

14 only in 'specific and explicit provisions for the allowance of attorneys' fees under

15 selected statutes.'"  (citation omitted)).  Even if attorney's fees were available, such an

16 interest is insufficient to support the Court's continuing jurisdiction over an otherwise

17 moot claim.  *See Lewis*, 494 U.S. at 480 ("interest in attorney's fees is, of course,

18 insufficient to create an Article III case or controversy where none exists on the merits

19 of the underlying claim").

20      Elysium cannot show that it continues to suffer an actual injury regarding the

21 royalty payments—ChromaDex does not contest that Elysium is entitled to the relief

22 which it seeks and has already relinquished its right to enforce the TLRA and has

23 committed to credit any such royalties against Elysium's liability in this case.  In short,

24 even if unjust enrichment was a viable standalone claim in California, Elysium would

25 lack standing because there is no injury to litigate and no further relief for the Court to

26 grant. The claim should be dismissed under Rule 12(b)(1).

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

18.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

# V.   MOTION TO STRIKE PATENT MISUSE ALLEGATIONS RELATED TO ELYSIUM'S UNJUST ENRICHMENT COUNTERCLAIM.

If the Court does not dismiss Elysium's unjust enrichment counterclaim, it should nonetheless strike the allegations of patent misuse as immaterial to the unjust enrichment claim under Rule 12(f) and streamline the resolution of this action.

## A.   ELYSIUM'S ALLEGATIONS OF PATENT MISUSE ARE IMMATERIAL TO THE CLAIMS AND DEFENSES IN THIS ACTION.

Elysium would unnecessarily have the Court decide whether the TLRA is unenforceable due to patent misuse in order to determine if Elysium is entitled to restitution of royalties that ChromaDex has already covenanted to refund.  (SAC ¶¶ 145–50.) Specifically Elysium alleges that ChromaDex's requirement that Elysium "pay royalties for ChromaDex's trademarks, in exchange for access to ChromaDex's supply of NR and to ChromaDex's patent rights, was unlawful and constituted patent misuse." (SACC ¶ 145.) Elysium thus claims that "ChromaDex is and was unjustly enriched by retaining royalties paid under an unlawful and unenforceable agreement." (SACC ¶ 148.)

The Court should strike these allegations as immaterial.  The Ninth Circuit has defined "immaterial" matter under Rule 12(f) as "that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy*, 984 F.2d at 1527 (internal quotation marks and citation omitted).  Here, Elysium alleges that the TLRA is unenforceable due to patent misuse.  However, the enforceability of the royalty provisions of the TLRA, and the patent rights allegedly asserted therein, is a moot point—ChromaDex renounced any right to enforce the agreement, now or in the future.  (TAC ¶ 62.)  There is no reason for the Court to delve further into *why* it is unenforceable, so the issue of patent misuse has "no essential or important relationship" to Elysium's claim for unjust enrichment. In other words, the patent misuse allegation is moot and immaterial under Rule 12(f). *See Derry v. Jackson Nat'l Life Ins. Co.,* No. SACV 11-0343 DOC (RNBx), 2011 WL 7110571, at *11 (C.D. Cal. Oct. 5, 2011) ("a

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

19.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1    claim made without standing is immaterial because it [] can no longer be considered

2    essential to Plaintiffs' claim for relief"); *see also Bureerong v. Uvawas*, 922 F. Supp.

3    1450, 1479 (C.D. Cal. 1996) (striking allegations that "add[ed] nothing to the material

4    allegations" of the complaint).   Striking the patent misuse allegations is therefore

5    proper.

6        Furthermore, Elysium's expected insistence that its unjust enrichment

7    counterclaim entitles it to a determination of whether there was patent misuse, should

8    not be given any credence.  A party has no legal or equitable interest in an admission or

9    finding of liability.  *See Already*, 568 U.S. 85 (2013) (holding a covenant not to sue

10   mooted a counterclaim of trademark invalidity, notwithstanding the lack of an

11   admission or finding of liability); *McCauley v. Trans Union, LLC,* 402 F.3d 340, 342

12   (2d Cir. 2005) (holding a plaintiff "is not entitled to keep litigating his claim simply

13   because [the defendant] has not admitted liability").   Thus, because ChromaDex does

14   not contest whether the TLRA is enforceable with respect to the royalties at issue, and

15   since the TLRA has expired, Elysium has no real or legitimate interest in a judgment

16   finding the TLRA is unenforceable.

17       **B.    THE PATENT MISUSE ALLEGATIONS SHOULD BE STRICKEN BECAUSE**

18       **THEY ARE PREJUDICIAL AND WILL UNNECESSARILY COMPLICATE DISCOVERY AND TRIAL.**

19       Not only are Elysium's patent misuse allegations proper to strike, the

20   circumstances here present the exact situation for which Rule 12(f) was designed.  The

21   "function of a 12(f) motion to strike is to avoid the expenditure of time and money that

22   must arise from litigating spurious issues by dispensing with those issues prior to trial."

23   *Sidney Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  While "motions

24   to strike are proper, even if the material is not prejudicial to the moving party," *Ganley*,

25   2007 WL 902551, at \*2, prejudice to the moving party weighs in favor of striking the

26   allegations, *see Fantasy*, 984 F.2d at 1528.

27       Striking the patent misuse allegations will streamline the issues before the Court,

28   conserving party and Court resources.  Litigating the patent misuse allegations would

entail a significant burden on the parties and the Court, which is perhaps Elysium's improper objective. Evidence going to the question of patent misuse in this case would be the subject of extensive fact discovery and expert testimony, covering antitrust-like issues such as defining the relevant market in which ChromaDex operates, determining whether ChromaDex has market power, and determining if ChromaDex's conduct actually hurt competition in that market. *Cf. Ill. Brick Co. v. Illinois*, 431 U.S. 720, 764 (1977) (noting the "extended nature of antitrust actions, often involving years of discovery"). If the allegations are not stricken, the parties would also litigate ChromaDex's defense that it has purged the alleged misuse—further extending the scope of the inquiry. The extensive nature of the issue is demonstrated by Elysium's first set of requests for production. Twenty-nine of the eighty requests are directed at the patent misuse counterclaim. (Declaration of Jon F. Cieslak ¶ 3.) Further, sixty-one of 150 paragraphs in the SACC are directed solely at this issue. (*See* SACC ¶¶ 5–6, 21, 28–41, 55–60, 90–109, 132–143, 145.) Neither ChromaDex nor the Court should be required to litigate these immaterial phantom issues when they have no bearing on any claims in the action. *Fantasy*, 984 F.2d at 1528 (finding that "the stricken allegations would have unnecessarily complicated the trial of the copyright claim by requiring the introduction of extensive evidence of the tax plan agreements and a mass of related documents, potentially adding weeks to the trial").

All this information and testimony, targeted at a single uncontested element of Elysium's (unviable) unjust enrichment claim, would distract from the real issues in this case: the alleged breaches of contract. Instead of focusing on the contracts between Elysium and ChromaDex, litigating patent misuse and ChromaDex's purge of any alleged misuse might require the examination of evidence concerning ChromaDex's historical and present contractual arrangements with other parties and the related negotiations. *See, e.g.*, *Koratron Co. v. Lion Unif., Inc.*, 409 F. Supp. 1019, 1031–32 (N.D. Cal. 1976) (examining the defendant's agreements and amendments to those agreements with twenty-one licensees). ChromaDex's agreements with other

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

21.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)

1    customers have nothing to do with the alleged breaches of the contracts at issue in this

2    case but would be an expensive sideshow for the lawyers, and perhaps further Elysium's

3    objective of using litigation as an economic tool to cause its adversary to spend

4    resources on immaterial and irrelevant issues.

5           The patent misuse allegations should also be stricken because they create a risk

6    of prejudice to ChromaDex.   For example, Elysium's patent misuse allegations,

7    incorporated into the unjust enrichment counterclaim (SACC ¶ 144), allege that

8    ChromaDex: "forced Elysium to pay" royalties (SACC ¶ 6); "exploited" its market

9    power (SACC at 6); "dictates" prices to its customers (SACC ¶ 32); "coerced customers

10   into paying" for a trademark license (SACC ¶ 41); and "extract[ed] higher prices"

11   (SACC ¶ 59).   These allegations of prior alleged misconduct are prejudicial to

12   ChromaDex, especially given their irrelevance to the matters before the Court.  *See IV*

13   *Sols., Inc. v. CIGNA Healthcare of Cal. Inc*., No. 215-CV-05730-SVW-FFM, 2016 WL

14   6902457, at *5 (C.D. Cal. Jan. 7, 2016) (striking "references to Defendants alleged prior

15   misconduct [that was] immaterial or impertinent to the present action").

16          Ultimately, Elysium's allegations that the TLRA is unenforceable due to patent

17   misuse in its unjust enrichment counterclaim are spurious: the unjust enrichment

18   "claim" is not cognizable under California law and ChromaDex does not seek to enforce

19   the royalty provisions of the TLRA.  (TAC ¶ 62.)  Indeed, the inclusion of patent misuse

20   allegations in the new counterclaim is a transparent bid to resurrect Elysium's now-

21   defunct declaratory judgment of patent misuse counterclaim and unnecessarily raise the

22   stakes in this litigation.   The Court should exercise its discretion and strike the

23   allegations regarding patent misuse from Elysium's unjust enrichment claim to

24   streamline the issues in this case.

25   **VI.    CONCLUSION**

26          For the reasons set forth above, ChromaDex requests that the Court (1) dismiss

27   Elysium's fourth counterclaim for lack of subject matter jurisdiction; and (2) dismiss

28   Elysium's fifth counterclaim for failure to state a claim and/or for lack of standing, or

22.

1  (3) in the alternative, strike the patent misuse allegations related to Elysium's fifth

2  counterclaim as immaterial.

3

4  Dated: October 25, 2017                    COOLEY LLP
                                              ANTHONY M. STIEGLER (126414)
5                                             EAMONN GARDNER (310834)
                                              JON F. CIESLAK (268951)
6                                             SOPHIA M. RIOS (305801)

7

8                                             /s/ Anthony M. Stiegler
                                              _____
9                                             Anthony M. Stiegler (126414)
                                              Attorneys for Plaintiff and Counter-
10                                            Defendant ChromaDex, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

23.

CHROMADEX'S MPA ISO
MOT. TO DISMISS & MOT. TO STRIKE
SACV 16-2277-CJC (DFMx)